UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re: WINN-DIXIE STORES, INC., et al.,

Reorganized Debtors.

---

IRT PARTNERS, L.P., et al.,

Appellants/Cross-Appellees,

v.   Case No. 3:08-cv-391-J-12
     Case No. 3:05-bk-03817-3F1

WINN-DIXIE STORES, INC.,

Appellee/Cross-Appellant.

---

## OPINION AND ORDER

This case presents an appeal pursuant to 28 U.S.C. § 158(a) and Rule 8001 of the Federal Rules of Bankruptcy Procedure, from the United States Bankruptcy Court for the Middle District of Florida. On February 7, 2008, the Bankruptcy Court entered its Order Sustaining Debtors' Objection to Claims Filed By IRT Partners, L.P. and Equity One (Hunter's Creek) Inc. (Doc. 1-5).[1] That same date, the Bankruptcy Court's Findings of Fact

---

[1] The entire record on appeal was submitted to this Court electronically and is found at Document 1 in the record of this Court. In citing to the record on appeal, the Court uses the Document number that appears at the top of each printed page of a document, "Doc. 1-x." In order to locate those documents on the electronic record, one must go to Document 1 on the docket and look for attachment number x minus 1, as Document 1, the Bankruptcy Court's Transmittal of Record to District Court cover sheet, is in effect Doc.1-1. For example, the Court refers to the Bankruptcy Court's Order Sustaining Debtors' Objection to Claims Filed By IRT Partners, L.P. and Equity One (Hunter's Creek) Inc. as Doc. 1-5, which is the document number that appears at the top of the printed page. That document, Doc.1-5, is found in the electronic record of

and Conclusions of Law (Doc. 1-4) were entered. Throughout this Opinion and Order, the Court will refer to the Bankruptcy Court's Order Sustaining Debtors' Objection to Claims Filed By IRT Partners, L.P. and Equity One (Hunter's Creek) Inc. (Doc. 1-5) and its Findings of Fact and Conclusions of Law (Doc. 1-4) collectively as the Bankruptcy Court's Order (Docs. 1-5 and 1-4).

Appellants, IRT Partners, L.P. (IRT) and Equity One (Hunters Creek), Inc., (Equity One)(Appellants) filed this appeal. The Reorganized Debtors, Winn-Dixie Stores, Inc., et al., (Winn-Dixie), have filed a cross-appeal.

## FACTS AND PROCEDURAL HISTORY

This appeal arises out of a Chapter 11 proceeding involving Winn-Dixie which commenced February 21, 2005. The facts and procedural history leading to the Bankruptcy Court's Order (Docs. 1-5 and 1-4), entered February 7, 2008, are not in dispute, and the Court will summarize them briefly. During the course of the Chapter 11 proceedings, the Bankruptcy Court authorized Winn-Dixie to reject its leases with both Appellants. See Doc. 1-16. Winn-Dixie sent Notices of Rejection of its leases to both Appellants (Docs. 1-17 and 1-18), and on November 15, 2005, both Appellants filed proofs of claim (Docs. 1-38 and 1-39)(original claims).[2] IRT's original claim sought rejection

---

this Court as Document 1, at attachment 4, which is Doc. 1-(x minus 1).

[2] On page 2 of its Findings of Fact and Conclusions of Law (Doc. 1-4), the Bankruptcy Court noted that the Notices of Rejection were filed on September 14, 2005, and on October 31, 2005, Appellants filed a motion to extend the Rejection Claims bar date to November 15, 2005, but a hearing was never sought on the motion nor was a ruling made. The Bankruptcy Court considered Winn-Dixie's objections to Appellants' amended claims without further comment or discussion of this matter.

2

damages for unpaid real estate taxes that had accrued since 2004 (Doc. 1-38), and Equity One's original claim sought rejection damages for unpaid common area maintenance expenses, real estate taxes and insurance premiums that had accrued since 2004 (Doc. 1-39). In ruling on objections to those original claims filed by Winn-Dixie (see Doc. 1-22), the Bankruptcy Court reduced Appellants' original claims, disallowing any amounts exceeding the reduced claims (see Doc. 1-25 at ¶ 6 and Exhibit E), without objection, appearance, or appeal by Appellants.

After notice to all interested parties, without objection by either Appellant, on November 9, 2006, the Bankruptcy Court entered an Order (Doc. 1-23) confirming the Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors (the Reorganization Plan)(Doc. 1-20), which provided among many other things, that unsecured claims would be paid by distribution of New Common Stock issued by Winn-Dixie. On December 22, 2006, and January 9, 2007, Winn-Dixie distributed and Equity One and IRT accepted shares of New Common Stock in satisfaction of their reduced original claims. Doc. 19 at p. 7 ¶ 23.[3]

On January 5, 2007, each Appellant filed an Amended Proof of Claim (Docs. 1-40 and 1-41)(amended claims) which included the reduced original claim amount and additional claims for rejection damages for unpaid rent. Equity One's original claim (Doc.

---

[3] This document is Winn-Dixie's Answer Brief and Initial Brief on Cross-Appeal. The portions of the Bankruptcy Court record cited by Winn-Dixie are not part of the record on appeal. However, the Court notes that Appellants' brief (Doc. 10 at p. 4, n.5) states that Winn-Dixie transferred shares of New Common Stock to Equity One on December 22, 2006, as payment for its reduced original claim. This fact appears to be uncontested as there is no indication otherwise in the record that Appellants did not accept payment of New Common Stock in satisfaction of their reduced original claims as stated by Winn-Dixie.

1-39) was for $87,498.59, reduced to $16,913.96 (see Doc. 1-25 at ¶ 6 and Exhibit E), and its amended claim (Doc. 1-41) was for $878.478.41; IRT's original claim (Doc. 1-38) was for $20,364.24, reduced to $11,636.71 (see Doc. 1-25 at ¶ 6 and Exhibit E), and its amended claim (Doc.1-40) was for $185,244.67.[4] Winn-Dixie filed objections (Doc. 1-27) to the amended claims and the Bankruptcy Court's Order (Docs. 1-5 and 1-4) sustained its objections, disallowing the amended claims (Docs. 1-41 and 1-40).

---

[4] Both Equity One's original claim (Doc. 1-39) and its amended claim (Doc. 1-41) are designated as claims for lease rejection damages. Equity One's original claim sought damages for unpaid common area maintenance expenses, real estate taxes and insurance that had accrued since 2004 ($87,498.59) through November 11, 2005, and reserved the right to amend and supplement its rejection damages claim as estimated amounts became fixed and additional information became available. Its amended claim sought the amount remaining after the Bankruptcy Court reduced the amount of that claim ($16,913.96), plus an additional amount for unpaid rent ($861,564.45).

Similarly, both IRT's original claim (Doc. 1-38) and its amended claim (Doc. 1-40) are designated as claims for lease rejection damages. IRT's original claim sought damages for unpaid real estate taxes that had accrued since 2004 ($20,364.24) through November 11, 2005, and reserved the right to amend and supplement its rejection damages claim as estimated amounts became fixed and additional information became available. Its amended claim sought the amount remaining after the Bankruptcy Court reduced the amount of that claim ($11,636.71), plus an additional amount for unpaid rent ($173,607.96).

The Bankruptcy Court's Order treats the amended claims as amendments to the original claims for rejection damages without discussion or analysis. Winn-Dixie argues on cross-appeal that the amended claims are really time-barred new claims, citing In re Lee Way Holding Company, 178 B.R. 976 (S.D Ohio 1995). While this argument may have some merit, the Court does not address this issue, as it finds that the Bankruptcy Court's Order is due to be affirmed on the issue presented on appeal as discussed below, and Winn-Dixie requested consideration of its cross-appeal only in the event the Court were to determine that the Bankruptcy Court's Order was due to be reversed or that remand should be required.

**ANALYSIS**

The sole issue presented on appeal is whether the Bankruptcy Court erred in not utilizing the five-part test set forth in In re International Horizons, Inc., 751 F.2d 1213, 1216 (11th Cir. 1985) in sustaining Winn-Dixie's objections to the Appellants' amended claims. Appellants seek either reversal of the Bankruptcy Court's Order (Docs. 1-5 and 1-4) or remand to allow the Bankruptcy Court to apply the International Horizons test. Winn-Dixie asks that the Court consider it's cross-appeal, which presents the issue of whether the Bankruptcy Court erred as a matter of law in considering the amended claims as amendments rather than as new and therefore untimely claims, only in the event that it determines that the Bankruptcy Court erred in not applying the International Horizons test. For the reasons set forth below, the Court finds that the Bankruptcy Court's Order (Docs. 1-5 and 1-4) is due to be affirmed, and so will not consider the issue presented on cross-appeal.

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. In re Colortex Industries, Inc., 19 F.3d 1371, 1374 (11th Cir. 1994). This Court reviews de novo the legal conclusions of the Bankruptcy Court, In re JLJ, Inc., 988 F.2d 1112, 1113 (11th Cir. 1993), and accepts the Bankruptcy Court's findings of fact unless they are clearly erroneous, In re Goerg, 930 F.2d 1563, 1566 (11th Cir. 1991); Bankr. Rule 8013. The issue presented on appeal is a purely legal issue, therefore the Court reviews it de novo.

In considering Winn-Dixie's objections to the Appellants' amended claims, the Bankruptcy Court framed the issue before it as whether the doctrine of res judicata barred

the amended claims, and examined the specific language contained in Winn-Dixie's Reorganization Plan, the law concerning the effect res judicata has on confirmed plans, and applicable policy considerations. Doc. 1-4 at p. 4.

The Bankruptcy Court first examined the Reorganization Plan (Doc. 1-20) language of §4.3(g) which provides that distributions of New Common Stock were intended to be "in full satisfaction, settlement, release, and discharge of and in exchange of" allowed claims. Doc. 1-20 at p. 18. Section 12.13 of the Reorganization Plan also provides that:

> "all consideration distributed under the [Reorganization] Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims of any nature whatsoever against the Debtors...not limited to ...debts of the kind specified in Section 502 of the Bankruptcy Code [which includes rejection damages] ...[and] all Persons shall be precluded from asserting against the Debtors ... any other or further claims, debts, rights, ...based upon any act, omission, transaction, occurrence or other activity of any nature that occurred prior to the Effective Date [of the Reorganization Plan]...

Doc. 1-20 at p. 43. The Bankruptcy Court primarily relied on two cases in support of its conclusion that based upon this Reorganization Plan language, the doctrine of res judicata precluded the Appellants from asserting additional amounts of rejection damages: In re New River Shipyard, Inc., 355 B.R. 894 (Bankr. S.D. Fla 2006), and Holstein v. Brill, 987 F.2d 1268 (7th Cir. 1993).

The court in New River considered whether the claimant should be allowed to amend its claim after the confirmation of the debtor's plan. That court cited International Horizons for the rule that "[a]mendments to claims are generally allowed where the purpose is to cure a defect in the original claim, to describe the claim with greater

particularity, or to plead a new theory of recovery on the facts set forth in the original claim." 355 B.R. at 908-909, citing International Horizons, 751 F.2d at 1216. It also noted that post-bar date amendments must be viewed with careful scrutiny to assure that the amendment is not an attempt to file a new claim under the guise of an amendment, and that case law mandates a significantly higher degree of scrutiny when amendment is sought after confirmation. Id. at 909, citing In re Enron Corp., 419 F.3d 115 (2nd Cir. 2005). The New River court identified several relevant factors in the analysis: whether there was a timely assertion of a similar claim evidencing an intention to hold the debtor's estate liable, and whether under the facts of the case, it would be equitable to allow the amendment, considering such matters as any prejudice to the debtor or other creditors, any windfall to creditors by disallowing the amendment, and whether the late claimant acted in good faith and the delay in seeking amendment was justified. Id. at 909.

The New River court concluded that amendment was improper on three separate grounds: waiver, estoppel, and res judicata. Id. at 909-912. In its analysis under res judicata, the court explained that

> [a] creditor's treatment under a confirmed plan of reorganization creates a contractual relationship between the debtor and the creditor. The creditor's pre-confirmation claim is subsumed in and replaced by the new contract created by the confirmed plan; 'each claimant gets a 'new' claim based upon whatever treatment is accorded to it in the plan itself."

Id. at 912, citing Holstein, 987 F.2d at 1270. The court noted that the doctrine of res judicata bars re-litigation of issues previously litigated as well as litigation of issues that may have been litigated, and that despite ample opportunity to amend its claim prior to plan confirmation the claimant waited until two months after confirmation, therefore under

those circumstances the doctrine of res judicata barred amendment of its claim.

New River is distinguishable from the case before the Court in two ways. The court in New River found first that the amendment sought in that case did not arise out of the same conduct, transaction or occurrence as the original claim, and second that the debtor and other creditors would be highly prejudiced by the amendment. The Bankruptcy Court did not make either finding regarding Appellants amended claims. Nevertheless, the Court cannot find that it erred in applying the res judicata principles set forth in New River.

The Court agrees with the Bankruptcy Court that International Horizons does not stand for the proposition that amendments to claims must be freely permitted at *any* time during the bankruptcy proceedings, as it did not involve a post-confirmation amendment, so did not discuss or address the effect of the confirmation plan language or the applicability of the doctrine of res judicata to the amended claim at issue. In a situation like the case at bar, involving a post-confirmation amendment, the Court is of the opinion that it would have been error *not* to consider the Reorganization Plan language as well as the effect of res judicata on Appellants' original claims in determining whether amendment of those claims should be permitted.

Appellants attempted to amend their claims after they had been reduced by the Bankruptcy Court without objection from them, and after Winn-Dixie's Reorganization Plan had been confirmed without objection from them. The Reorganization Plan language explicitly sets forth that the effect of accepting New Common Stock is to fully satisfy the claims.

In this case, although their original claims included language reserving the right to amend and supplement those claims, Appellants were in sole possession of the

8

information regarding the amount of their amended claims for lost rent, and the record reveals no basis for waiting until after the original claims had been reduced, and after confirmation of the Reorganization Plan to attempt to assert their claims for lost rent. The Reorganization Plan was confirmed on November 9, 2006, their claims were reduced on November 30, 2006, and Appellants filed their amended claims on January 5, 2007. At the time the Bankruptcy Court was considering the Reorganization Plan and the claims reductions, Appellants certainly would have been aware that their original claims significantly understated their total rejection damages claims because they included no amounts for damages resulting from lost rent. Based on these facts, the Bankruptcy Court properly concluded that res judicata barred amendment.

Holstein also supports the Bankruptcy Court's conclusion. The Holstein court observed that while leave to amend a claim should be freely given early in a bankruptcy case, amendment is less appropriate with passing milestones in the case such as the claims bar date and plan confirmation. 987 F.2d at 1270. That court held that once the milestone of plan confirmation has been reached, amendment to a claim should only be allowed for compelling reasons, because the confirmation of the plan is equivalent to final judgment in an ordinary civil action and to permit amendment post-confirmation without a compelling reason runs the risk of rendering the plan infeasible or altering the distribution to other creditors. Id. The court noted it could find no other court that had permitted a claim to be increased for any reason post-confirmation. Id. at 1271.

The record before the Court does not indicate that Appellants' purported claims amendments would have rendered the Reorganization Plan infeasible or otherwise have affected other creditors, but neither does it demonstrate any compelling reason for allowing

the amended claims based on the facts discussed above. The Court finds nothing inequitable, much less compelling, about the circumstances of the case that call into question the Bankruptcy Court's sustaining of Winn-Dixie's objections to the amended claims. In other words, the Court cannot find that the Bankruptcy Court erred as a matter of law in considering and applying Holstein and other cases involving res judicata, to the facts before it. The Bankruptcy Court did not establish a bright-line rule that no claim may ever be amended post-confirmation, but examined the facts and circumstances of the case before it and found nothing compelling or inequitable that would warrant refusal to apply the doctrine of res judicata.

The Bankruptcy Court also carefully considered a case cited by Appellants, In re Telephone Company of Central Florida, 308 B.R. 579 (Bankr. M.D. Fla. 2004), which did permit a post-confirmation claim amendment. The Telephone Company court permitted the IRS to amend its claim post-confirmation for the same taxes covering the same time periods, finding that the IRS had provided adequate notice that the examination regarding the claim amount was pending, had not intentionally or negligently delayed in seeking an amendment, and that it may well have filed the claim earlier had the debtor cooperated with the IRS. 308 B.R. at 582-583. The court noted that "[a] proof of claim for unpaid taxes that effectively increases the amount sought does not bar amendment, unless the claim asserts a different tax or a different fiscal time frame." Id. at 582 (citation omitted).

The Court is of the opinion that the facts regarding Appellants' claims are sufficiently distinguishable from those at issue in Telephone Company to warrant a different result. The most important factual distinction is that at all relevant times, the necessary information to calculate the full amounts of their claims for rejection damages remained

with Appellants. There is no indication from the record that any conduct of Winn-Dixie contributed to Appellants' delay in seeking amendment. Moreover, Appellants had at least two opportunities, when their claims were reduced and when the Reorganization Plan was confirmed, to advise the Bankruptcy Court and Winn-Dixie that their claims would need to be amended to reflect a significantly higher amount. Finally, both Appellants accepted shares of New Common Stock in satisfaction of their original claims, which under the express terms of the Reorganization Plan, extinguished their claims. Based on these factual distinctions, and the fact that the Telephone Company court did not consider the issue of res judicata in reaching its conclusion to permit amendment post-confirmation, the Bankruptcy Court did not err declining to consider Telephone Company sufficient authority to control the result in this case.

The Bankruptcy Court determined that the fact that the Appellants sought to amend their claims post-confirmation was significant in determining whether to permit such amendment and implicated res judicata concerns regarding Winn-Dixie's confirmed Reorganization Plan. The Bankruptcy Court did not use the five-factor analysis set forth in International Horizons because it concluded that the res judicata effect of the confirmed plan dictated the result on the specific facts before it, including such facts as the language of the Reorganization Plan, and the basis for delay in seeking amendment. This Court agrees that the amendments should not have been permitted under the circumstances of this case and cannot find that the Bankruptcy Court erred in not undertaking the five-factor International Horizons analysis.

The Court has carefully reviewed the briefs submitted by the parties as well as the applicable law, considered the argument of counsel presented at oral argument held on

March 11, 2009, and reviewed the entire record on appeal. For the reasons set forth above, the Court will affirm the Bankruptcy Court's Order (Docs. 1-5 and 1-4).

**CONCLUSION**

The decision of the Bankruptcy Court is AFFIRMED as to the issue presented on appeal for the reasons set forth herein.

**DONE AND ORDERED** this 10TH day of April 2009.

*Howell W. Melton*
**SENIOR UNITED STATES DISTRICT JUDGE**

c:

Clerk, United States Bankruptcy Court, Middle Dist. of Fla.
Counsel of Record